510 A.2d 919

John R. Jones, D.C., Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued May 15, 1986, before Judges MacPhail and Colins, and Senior Judge Rogers, sitting as a panel of three.

*Carl Gainor,* for petitioner.

*Roger T. Margolis,* with him, *Bradford Dorrance,* Assistant Counsel, for respondent.

Opinion by Senior Judge Rogers, June 12, 1986:

This is the appeal of John R. Jones, D.C. (petitioner) from an order of the Pennsylvania Department of Public Welfare (DPW) finding the petitioner liable to reimburse the DPW for all payments made by the DPW to him for medical services rendered to twelve medical assistance patients, and suspending him from participation in the Pennsylvania Medical Assistance Program until June 23, 1987.

The petitioner is a chiropractor. From 1978 through 1980 he was a participating provider in the Pennsylvania Medical Assistance Program. On September 6, 1981, the petitioner moved his residence and practice to California.

By letter, dated March 25, 1982, the DPW requested the petitioner to furnish for review copies of his records relating to twelve cases. On March 30, 1982, the petitioner by telephone and in writing informed

DPW that he had moved to California and that his medical records as well as his other personal property which were in the possession of movers had been water and heat damaged enroute to California. He wrote that the medical records were "unsalvageable."

On June 23, 1982, DPW issued upon the petitioner an order to show cause why he should not be suspended from participation in the Medical Assistance Program for four years for failing to provide the medical records requested, and directing him to make restitution to DPW of $15,120.62 in payments made to him from 1978 through 1981 on account of every Medical Assistance patient he treated during that time. The amount ordered to be repaid included payments to the petitioner on account of the twelve patients named in the DPW's earlier communication.

By letter dated June 28, 1982, the petitioner requested a hearing. He also began searching among his records to see if those of some of his Medical Assistance patients were salvageable. Although the records seem to have been damaged, had been rearranged and placed in mis-marked boxes, the petitioner was able to locate the records of the twelve patients first mentioned. He notified the DPW by telephone that he had retrieved the twelve requested records and offered to send them for review. The petitioner was first directed to send the records to the DPW. However, he was later informed by Bradford Dorrence, Esquire, assistant division counsel of the DPW, that he should not send these records because the DPW was no longer interested in reviewing them; that a hearing had been scheduled and that DPW was now seeking restitution of all the monies it had paid the petitioner over the years of his participation in medical assistance. These events occurred in June and July 1982.

The petitioner came to Philadelphia from California and represented himself at the formal administrative

hearing scheduled for and held on October 18, 1982 and conducted by a so-called hearing attorney. The petitioner brought with him the twelve records DPW had originally requested. These were admitted into evidence over the objection of counsel for the DPW who stated that the DPW "cannot accept these records at this time."

Following the hearing, the hearing examiner concluded that since the DPW originally requested twelve specific patient records and since the petitioner had undergone review by DPW in November, 1979 and February 1980 with no sanctions having been applied, the petitioner could be held liable only on account of the twelve cases originally requested. The hearing attorney, however, wrote that since "the 12 requested records were not in fact submitted in a timely fashion . . . it is . . . recommended that restitution is owing the Department for Medical Assistance payments made to appellant concerning the 12 patients listed. . . ." The hearing attorney recommended that restitution for these twelve cases be ordered and that the petitioner be suspended from participation in the Pennsylvania Medical Assistance Program until June 23, 1987. The Director of the DPW's Office of Hearings and Appeals issued the DPW's final administrative decision adopting the attorney examiner's recommended decision in its entirety. This appeal followed.

Our scope of review of adjudications is limited to a determination of whether the findings are supported by substantial evidence, whether the law had been properly applied, and whether the petitioner's constitutional rights have been observed. *Miller v. Department of Public Welfare,* 74 Pa. Commonwealth Ct. 642, 460 A.2d 912 (1983).

The petitioner contends that the Office of Hearings and Appeals erred in law in concluding that he had

committed a violation of regulations justifying an order of restitution. The pertinent regulation, 55 Pa. Code §1101.81(a), states that restitution may be required:

[i]f the Department *determines* that a provider has been paid for undocumented or unnecessary services, or that he has erroneously billed, it will review his paid invoices and compute the amount of the overpayment or improper payment. The provider will be required to repay this amount either directly or by offset on his future invoices. (Emphasis added.)

The hearing attorney whose decision the Office of Hearings and Appeals has upheld made no determination that the petitioner was paid for undocumented or unnecessary services, or that he erroneously billed for such. Indeed, the hearing examiner found only that the petitioner did not submit the twelve requested records in a timely fashion. The hearing examiner in fact concluded that there was no case made for restitution. He wrote:

The Department conducted an on-site visit and review . . . at [petitioner's] office on 11/30/79 and, in 2/80, an in-house review of requested office records and x-rays of medical assistance patients of the [petitioner]. (Exhibit C-1). No sanction was applied but a recommendation was made . . . [that] corrections [be made in] certain deficiencies in the future progress notes, billing procedures, identification method and quality of x-rays etc. (Exhibit C-1). This Exhibit would seem to rebut the presumption urged by Counsel for the Department . . . that all services billed by [petitioner] during 1978 through 1981 'were not rendered or were non-compensible'. [sic] *The 12 specifically requested patient records presented by the [petitioner] at the for-*

*mal hearing also leads to the same inference.*
(Emphasis supplied.)

Since there has been no determination of undocumented or erroneous billing, the decision that the petitioner should make restitution is clearly erroneous. Therefore, we must reverse the order of the board requiring restitution for the twelve cases in question.

Concerning the Office of Hearings and Appeals' order terminating the petitioner's provider's agreement, the then applicable pertinent regulation, 55 Pa. Code §1101.81(b), which allows for termination of the provider agreement:

> if [DPW] has evidence that the provider is not complying with duly promulgated regulations of the Medical Assistance Program or:
>
> 7. Has failed to furnish information the Department finds necessary to determine whether or not payment is or was due under the Medical Assistance Regulation.

Again we believe that the facts do not support a conclusion that the petitioner violated the regulation. As we have reported, the petitioner, when requested for twelve files replied from California that his goods, including his records had been damaged. After being later charged with violations, he wrote to and called DPW by telephone that he had retrieved the wanted files, offering to send them for inspection. A DPW assistant counsel called the petitioner by telephone and told him not to send the records; that DPW was no longer interested in particular cases but only in restitution of all of the monies it had paid him during the practice of his profession in Pennsylvania by reason of his failure timely to produce his records. These events occurred more than three months before the hearing at which the petitioner was substantially found by the hearing attorney not to have irregularly applied for reimbursement with

respect to twelve cases, as originally charged. These facts do not support a conclusion that the petitioner failed to furnish information necessary to DPW's determinations of this matter. Indeed, he offered to furnish the information months before the initial hearing.

Order reversed.

### ORDER

AND NOW, this 12th day of June, 1986, the order of the Department of Public Welfare in the above-captioned matter is reversed.